# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# DEL RIO DIVISION

| | | |
|---|---|---|
| MICHAEL L. MARTIN,<br>　　Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No.<br>DR-18-CV-015-AM-VRG |
| UVALDE CITY POLICE<br>DEPARTMENT,<br>　　Defendant. | §<br>§<br>§<br>§ | |

## REPORT AND RECOMMENDATION

TO THE HONORABLE ALIA MOSES, UNITED STATES DISTRICT JUDGE:

The Court referred the above-captioned matter to the undersigned for initial proceedings consistent with 28 U.S.C. § 636(b). The matter is pending before the undersigned on Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs. For the following reasons, it is recommended that Plaintiff's application [ECF No. 3] be **DENIED.**

## I. BACKGROUND

In his complaint, Plaintiff names the "Uvalde City/Township Police Department" as the Defendant and brings a constitutional tort claim pursuant to 42 U.S.C. § 1983 for the alleged violation of his Fourth Amendment right to be free from unreasonable searches and seizures and a Fourteenth Amendment-based equal protection claim. (*See* Compl. 2-3, ECF No. 1.) According to Plaintiff's supporting allegations, around 2:20 a.m. on the Monday after Thanksgiving, officers from the City of Uvalde Police Department searched Plaintiff's property without a warrant and without his consent. He describes the searched property as his backyard enclosed by a fence and hidden from view by shrubs, which is where the officers entered his property. (*Id.* at 4.) Plaintiff contends that the officers made noise during the search which prompted him to obtain his handgun, making sure the officers could see what he was doing. In response, an officer pointed to his badge and

mouthed the word "police," leading Plaintiff to instruct them to come to his front door to speak with him. (*Id.* at 5.) At the conclusion of the search, Plaintiff avers that the officers knocked on his door to explain what was occurring and that one of the officers had his weapon drawn upon Plaintiff. (*Id.* at 4.)

Plaintiff acknowledges that he suffered no monetary injury as a result of the actions described in his complaint. (*Id.* at 5.) He complains, however, that his Fourth Amendment right to be free form unreasonable searches and seizures was violated and asserts a Fourteenth Amendment equal protection claim based upon his statement that "[p]olice are rarely prosecuted for killing armed civilians . . . [while] civilians are almost always charged for killing armed policemen . . . ." (*Id.* at 3.) As relief, Plaintiff seeks an inunction preventing the City of Uvalde Police Department from intruding on his property without a warrant or invitation. He also aims to create a judicial record of his efforts to minimize his contact with, and damages from, his interaction with the police on his property. (*Id.* at 5.)

## II. DISCUSSION

Proceeding court without prepayment of fees or costs, also known as proceeding *in forma pauperis* or "IFP" is a privilege, not a right, designed to "advance[] a policy of equality of access, ensuring that those who cannot afford the payment of costs have the same ability to present meritorious claims as those who can afford such payment." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 953 (4th Cir. 1995) (en banc). An individual need not be "absolutely destitute" to proceed IFP; instead, IFP status is available to a person who declares by affidavit that he "cannot because of his poverty pay or give security for the costs and still be able to provide himself and dependents with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331,

339 (1948) (quotation omitted). The governing statute, 28 U.S.C. § 1915(a)(1), permits District Courts to "authorize the commencement . . . of any suit, action or proceeding, civil or criminal . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." Although § 1915(a)(1) is part of the Prison Litigation Reform Act and refers to the assets of a "prisoner" in certain subsections, it is well-established that § 1915(a)(1) applies to non-prisoner suits seeking IFP status. *See, e.g., Floyd v. United States Postal Serv.*, 105 F.3d 274, 275-76 (6th Cir. 1997); *Schagene v. United States*, 37 Fed. Cl. 661, 663 (1997); *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997); *Leonard v. Lacy*, 88 F.3d 181, 183 (2d Cir. 1996).

Under § 1915(a), the relevant question is whether the applicant is "unable to pay such fees," which has been interpreted to mean that paying filing fees would "constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (2007); *see also Adkins*, 335 U.S. at 339-40. Accordingly, the Court must evaluate the plaintiff's financial condition as set forth in his application affidavit to determine whether requiring the prepayment of fees would constitute a serious hardship upon him. *See Moore v. United States*, 93 Fed. Cl. 411, 413 (Fed. Cl. 2010). In ruling on an application to proceed IFP, courts may appropriately consider the total monetary resources available to the plaintiff, including the income of interested persons, such as spouses. *See Adkins*, 335 U.S. at 339. And while "[t]he allegations contained in the affidavit concerning the movant's financial status typically are accepted at face value . . . , the court may inquire into such allegations and demand more specific information if necessary for a proper assessment of the movant's financial status." *Monti v. McKeon*, 600 F. Supp.

112, 113 (D. Conn. 1984) (citing *Zaun v. Dobbin*, 628 F.2d 990, 992-93 (7th Cir. 1980)).

To that end, Plaintiff's application reveals that he has nearly $25,000 cash in savings and receives after-tax retirement income of approximately $2,600 to $2,800 per month which is adequate to cover his monthly expenses for his mortgage, utilities, gas, insurance, and groceries. (App. 1-2, ECF No. 3.) He has no dependent household members. (*See id.* at 2.) Under these circumstances, and given that Plaintiff's annual income is nearly triple the Federal Annual Poverty Guidelines for a family of one, *see* 83 Fed. Reg. 2642 (Jan. 18, 2018), the undersigned concludes that the prepayment of fees for this suit would not "constitute a serious hardship," or interfere with his ability to provide himself with the necessities of life. Therefore, it is **RECOMMENDED** that Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs [ECF No. 3] be **DENIED**, that the complaint be dismissed without prejudice accordingly, and that the Clerk close the above-captioned cause.

## III. SCREENING

Should the Court disagree with the undersigned's assessment that it is not appropriate to award Plaintiff IFP status and instead choose to allow him to proceed IFP, then the undersigned alternatively recommends that the complaint be dismissed with prejudice under § 1915's screening provision as explained below.

The filings of pro se litigants are "'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, the Prison Litigation Reform Act ("PLRA"), which, again, largely applies to non-prisoner IFP suits despite its name, *see Haynes v. Scott*, 116 F.3d

137, 140 (5th Cir. 1997), contains a screening provision that requires district courts to "dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); *accord Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998) (per curiam).

A PLRA dismissal is reviewed under the same standard employed for a Rule 12(b)(6) motion to dismiss. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002). Thus, to survive PLRA screening, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Accordingly, while a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of . . . entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, quotations, and alterations omitted); *accord Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

Similarly, for PLRA purposes, a suit "is frivolous where it lacks an arguable basis either in law or in fact" or is "based on an indisputably meritless legal theory." *Neitzke v. Williams*, 490 U.S. 319, 325, 327 (1989). A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *See*

*Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). Typical examples of claims subject to dismissal pursuant to § 1915(e), include: (1) claims in which it is clear that the defendants are immune from suit, (2) claims for the infringement of a legal interest that clearly does not exist, and (3) claims which are barred by the statute of limitations. *See, e.g.*, *Neitzke*, 490 U.S. at 327; *see also Krueger v. Reimer*, 66 F.3d 75, 76-77 (5th Cir. 1995); *Boyd v. Biggers*, 31 F.3d 279, 284-85 (5th Cir. 1994) (both upholding the dismissal as frivolous of civil rights lawsuits on the grounds that the defendants were entitled to absolute judicial and prosecutorial immunity). Furthermore, a conclusory complaint - that is, one that fails to state material facts - may be dismissed as frivolous, *see, e.g.*, *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992), or for failure to state a claim upon which relief can be granted. *Rios v. City of Del Rio*, 444 F.3d 417, 426 (5th Cir. 2006).

"Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law." *Colson v. Grohman*, 174 F.3d 498, 505 n.2 (5th Cir. 1999). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred . . . ." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). Accordingly, a meritorious § 1983 claim hinges on the demonstration of (1) a violation of a right secured by the Constitution or laws of the United States and (2) that the violation was committed by a person acting under color of state law. *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Anderson v. Valdez*, 845 F.3d 580, 599 (5th Cir. 2016).

> A local government entity may be sued "if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) (quoting *Monell*, 436 U.S. at 690). Alternatively, municipal liability may attach where the

> constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval. *Monell*, 436 U.S. at 690-91. "[M]unicipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citation omitted). The elements of the *Monell* test exist to prevent a collapse of the municipal liability inquiry into a *respondeat superior* analysis. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 415, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). A municipality may not be subject to liability merely for employing a tortfeasor. *See, e.g.*, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). Municipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation. *Id.* at 391-92.

*Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166-67 (5th Cir. 2010). It is thus clear that there is no *respondeat superior* liability in § 1983 suits. *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." (emphasis in original)). It is also elementary that the existence of a constitutional violation is a prerequisite for imposing § 1983 municipal liability. *Doe v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 866 (5th Cir. 2012) (en banc) ("A claim of municipal liability under Section 1983 requires proof of . . . a violation of constitutional rights . . . ." (quotation omitted)). And it is well-settled that even where a constitutional violation has occurred, it must have been caused by a municipal policy or custom for § 1983 liability to attach to a municipality. *See id.*; *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (requiring a "direct causal link" between the municipal policy and the constitutional deprivation in order to hold a municipality liable under § 1983).

Plaintiff's allegations make clear that his basis for asserting that the only named Defendant - the City of Uvalde Police Department - bears liability for the alleged constitutional violations is because it employs the officers who purportedly violated Plaintiff's Fourth and Fourteenth

7

Amendment rights. Leaving aside the question as to whether Plaintiff's allegations are adequate to even allege such constitutional violations, they are clearly inadequate to state a claim against the City of Uvalde because they are based upon a *respondeat superior* theory which is inadequate to support § 1983 liability against a municipal defendant. Plaintiff's complaint contains no allegations or facts to support the conclusion that the City of Uvalde Police Department has promulgated any sort of official custom or policy that caused Plaintiff's alleged constitutional deprivations. (*See* Compl. 3-5.) For these reasons, it fails to state a claim against the only named Defendant and is subject to § 1915(e)(2) dismissal on screening if Plaintiff is permitted to proceed IFP.

## IV. CONCLUSION & NOTICE

For the reasons set forth in this report and recommendation, it is **RECOMMENDED** that Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs[ECF No. 3] be **DENIED,** that the complaint be dismissed without prejudice, and that the Clerk close the above-captioned cause. Alternatively, it is recommended that Plaintiff's original complaint be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim should the Court determine that Plaintiff is entitled to proceed IFP.

The parties may wish to file objections to the above recommendations. Failure to file written objections to the findings and recommendations contained in this Report and Recommendation within **fourteen (14)** days from the date of its receipt shall bar an aggrieved party from receiving *de novo* review by the District Court of the findings and recommendations contained herein, *see* 28 U.S.C. 636(b)(1)(C), and shall bar an aggrieved party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)

(en banc). This Report and Recommendation disposes of all issues and controversies referred to the undersigned in this proceeding. The Clerk shall terminate the referral to the undersigned entered in the above-captioned cause.

**SIGNED** this 24th day of July, 2018.

_____
**VICTOR ROBERTO GARCÍA**
**UNITED STATES MAGISTRATE JUDGE**